IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
NORTHERN DIVISION

GARY PEREZ                                                              PLAINTIFF

V.                              NO.  1:06cv-00002 SWW-JWC

CORRECTIONAL MEDICAL SERVICES, INC.                          DEFENDANT


PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

**INSTRUCTIONS**

The following recommended disposition has been sent to United States District

Court Judge Susan Webber Wright.  Any party may serve and file written objections to this

recommendation.  Objections should be specific and should include the factual or legal

basis for the objection.  If the objection is to a factual finding, specifically identify that

finding and the evidence that supports your objection.  An original and two copies of your

objections must be received in the office of the United States District Court Clerk no later

than eleven (11) days from the date of the findings and recommendations.  The copy will

be furnished to the opposing party.   Failure to file timely objections may result in waiver

of the right to appeal questions of fact.

If you are objecting to the recommendation and also desire to submit new, different,

or additional evidence, and to have a hearing for this purpose before the District Judge,

you must, at the same time that you file your written objections, include the following:

1.      Why the record made before the Magistrate Judge is inadequate.

2.      Why the evidence proffered at the hearing before the District
        Judge  (if such  a  hearing is granted)  was not  offered at  the
        hearing before the Magistrate Judge.

3.      The detail of any testimony desired to be introduced at the
        hearing before the District Judge in the form of an offer of
        proof,  and a copy,  or the original,  of any documentary or
        other non-testimonial evidence desired to be introduced at
        the hearing before the District Judge.

From this submission, the District Judge will determine the necessity for an additional

evidentiary hearing, either before the Magistrate Judge or before the District Judge.

Mail your objections and "Statement of Necessity" to:

        Clerk, United States District Court
        Eastern District of Arkansas
        600 West Capitol Avenue, Suite 402
        Little Rock, AR 72201-3325


## RECOMMENDATION

Plaintiff, a former prisoner of the Arkansas Department of Correction (ADC), has

filed this 42 U.S.C. § 1983 action alleging violation of his Eighth Amendment right not to

be subjected to cruel and unusual punishment.   He avers that Correctional Medical

Services, Inc. (CMS), the medical services provider for the ADC, is guilty of deliberate

indifference to his serious medical needs in that it failed to treat properly a long-standing

infection in his right ear, resulting in prolonged pain, multiple surgeries, additional medical

expense and permanent physical damage.   Plaintiff is represented by counsel.   The sole

defendant is CMS.

Defendant has filed a motion for summary judgment (docket entry #14), to which

Plaintiff has responded.   Defendant has also filed a reply, and Plaintiff has responded.[1]

---

[1]Defendant's summary judgment motion is accompanied by a brief in support (docket entry #15) and a statement of indisputable material facts (docket entry #16), to which are attached seven exhibits.  Plaintiff has filed a response (docket entry #26), with a brief in support (docket entry #27) and his own statement of indisputable material facts (docket entry #28), which also has exhibits

For the reasons stated below, I recommend that Defendant's motion for summary judgment be granted.

<u>Factual Background</u>[2]

Plaintiff has suffered long-standing problems with infections in his right ear.  He was incarcerated on October 9, 2000, and, according to his ADC medical records, first sought treatment for his ear problem on July 18, 2001.  Following that initial visit, he was seen frequently for the problem until shortly before his release from the ADC on February 22, 2002.  Some ten months after his release, he was diagnosed with cholesteatoma, a condition in which a pocket of skin forms behind the eardrum, then typically gets infected and erodes the eardrum and accumulates skin debris (granulation).  It is caused by a poor eustachian tube process.  That is, the eustachian tube becomes blocked and does not allow normal passage of fluids and air.  By the time of his diagnosis, Plaintiff's condition had progressed to the point that the infection had invaded bone tissue between the inner ear and brain.  It had to be surgically corrected, and three operations were necessary.  Plaintiff alleges permanent hearing loss.  His complaint is not that Defendant denied treatment.  It is, rather, that failure to refer him to a specialist and to diagnose his underlying condition over the period from July 18, 2001 to February 22, 2002, caused him long-term suffering, exacerbated his condition, and amounted to deliberate indifference.

---

attached.  In turn, Defendant filed a reply (docket entry #29) with exhibits attached.  Plaintiff then filed a motion for permission to file response (docket entry #30), which Defendant opposed (docket entry #31).  Plaintiff's motion was granted, and his response has been filed (docket entries #33, #34).

[2]There is no factual dispute as to the course of medical treatment.  The parties do not question the accuracy of the medical records.

The course of Plaintiff's treatment and the findings regarding his ear are set forth in detail in Defendant's Statement of Indisputable Material Facts and the copies of his original medical records, which are exhibits to the statement.  Briefly, the records show that Plaintiff was seen frequently.  His condition fluctuated, seeming to improve at times and then regressing.  Doctors tried a variety of antibiotics and steroids, but Plaintiff's infection was either chronic or recurring.

Dr. Charles Burton saw Plaintiff four times in July 2001, and the condition seemed to be improving.  However, he was seen six times in August 2001, with continuing problems.  On September 6, 2001, Dr. Burton noted that Plaintiff's ear was "approaching normal; good landmarks; no redness. . .," and noted that his otitis media[3] was resolving. That was Plaintiff's final visit with Dr. Burton, because Plaintiff was transferred to the ADC's Northeast Arkansas Community Correction Center on September 13, 2001.

Four days after the transfer, on September 17, Dr. Casey saw Plaintiff and noted that his right tympanic membrane was dull and retracted, with a green fluid present.  He prescribed another antibiotic and an antihistamine.  Importantly, he also submitted a consultation request for Plaintiff to be evaluated by an ear, nose and throat specialist (ENT).  Dr. Casey saw Plaintiff again on September 26, while the consultation request remained pending.

Dr. Roland Anderson, the CMS Regional Medical Director, reviewed the consultation request.  He testified in deposition that he reviewed the request against certain standard of care criteria, but that the criteria were not met because standard medical treatment had

---

[3]Middle ear infection.

not yet been exhausted.   He stated that he deferred the consultation and made recommendations to Dr. Casey as to other treatment alternatives, including a culture and sensitive (C&S) on any drainage to determine whether any bacteria was growing and, if so, the type.   Dr. Anderson recommended that the eustachian tube be decompressed with steroids and suggested that Dr. Casey consider Cipro, a strong, broad spectrum antibiotic, which would kill bacteria that other antibiotics would not.   He testified that because ear specialists usually try Cipro as a first measure, he thought trying that would be appropriate before making a referral.   Dr. Casey noted in the medical record that the consultation had been denied, but testified in deposition that he understood it was deferred, and that he was free to use his medical judgment.   The form itself has a notation that it was deferred.   Dr. Casey said he agreed with Dr. Anderson's suggestions.   No further consultation requests were ever made by any of the subsequent CMS treating physicians.   The circumstances of the consultation request and deferral will be discussed in more detail below, in the discussion of fault on the part of Dr. Anderson.

Apparently because Plaintiff had no drainage at the time, the culture was not taken,[4] but the other recommendations were followed.   However, Plaintiff was initially noncompliant with taking the Cipro.   He continued to have difficulty.   He was seen by a nurse on October 1, 2001, who advised him to take his medication.   She noted that Plaintiff had no swelling, no bulging, no redness, no perforated drum and no wax buildup, but just a small amount of drainage deep within his ear.   Plaintiff complained of earache in early November 2001, and was seen by Dr. Ly on November 7.   He was seen again on

---

[4]In fact, no culture was taken until December 2001.

November 10, and Dr. Ly 's examination results were normal.  He diagnosed resolving

otitis media, instructed Plaintiff to complete his Cipro, and released him from further care.

However, Plaintiff returned to the infirmary on December 1, 2001, complaining of ear

problems.  A culture was done that revealed an overgrowth of bacteria.  However the

bacteria were the type that normally reside on the human skin and were not pathogenic.

He was seen twice more in December and his problems seemed to be resolving.  Again,

however, Plaintiff returned with complaints in early January 2002 and was diagnosed with

an outer ear infection, which was treated and which improved.  In early February, he

complained of a cold, but the examining LPN noted that his ears appeared to be normal.

In mid-February, an LPN noted that his ears were pink and draining and issued over-the-

counter medications.  On February 16,  Plaintiff submitted a sick call request but did not

show up for his appointment the following day.  He signed a refusal of treatment and

release form and was released from the ADC on February 22, 2002.

There is no medical record verification that Plaintiff sought any medical treatment

for his ear for the first four months after his release.  The first record of treatment was June

26, 2002, when he was treated for otitis media and otitis externa[5] and was prescribed

antibiotics and ear drops.  The next documentation of treatment was in an emergency

room on October 22, 2002, and Plaintiff was referred to Dr. Todd Rumans, who saw

Plaintiff the same day.  He noted granulation tissue and prescribed cortisporin otic

suspension, a combination antibiotic and steroid medication, and told Plaintiff to return in

one month for a repeat ear check.  Dr. Rumans saw Plaintiff again on November 20, noting

---

[5]  Outer ear infection.

that there was less granulation tissue and that the majority of the eardrum surface was visible.  He continued the medication with Plaintiff to return in one month for a repeat check.  Plaintiff returned on December 3, complaining that his ear had been very painful.  His condition had deteriorated.  Dr. Rumans gave him additional medication, including Cipro (the same antibiotic which Dr. Anderson suggested when he deferred the consultation request in October 2001), and instructed him to return in one week.  He told Plaintiff he would most likely need surgery.  Plaintiff returned on December 10, 2002, and had gotten worse.  The doctor's assessment was "Right ear granulation with probable underlying cholesteatoma."  Doctors did a CT scan, which confirmed the diagnosis and showed that there was extensive bone deterioration.  Plaintiff was referred to Dr. John Dornhoffer, a University of Arkansas for Medical Sciences physician, who did Plaintiff's three surgical procedures.

<u>Parties' Contentions</u>

Defendant contends that summary judgment should be granted for three reasons.  Defendant's reply to Plaintiff's response to the motion argues that Plaintiff has not filed a proper statement of the material facts as to which it contends a genuine issue exists to be tried, as required by Local Rule 56.1.  Thus, Defendant argues, all the material facts set forth in its Statement of Indisputable Material Facts must be deemed admitted.  Defendant also argues that there is no substantial evidence upon which a jury could base a finding of deliberate indifference.  Finally, Defendant argues that CMS cannot be liable for any §

1983 violation because a defendant in a § 1983 action cannot be held liable on a theory of *respondeat superior.*[6]

### Summary Judgment Standard

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The Court must view the evidence in the light most favorable to the nonmoving party, giving him the benefit of all reasonable factual inferences. *Reed v. ULS Corp.*, 178 F.3d 988, 990 (8th Cir. 1999). A moving party is nevertheless entitled to summary judgment if the nonmoving party has failed to make a sufficient showing on an essential element of his case with respect to which he will have the burden of proof at trial. *Celotex*, 477 U.S. at 322-23. To avoid summary judgment, the nonmovant must go beyond the pleadings and come forward with specific facts, "by [his] own affidavit" or otherwise, showing that a genuine, material issue for trial exists. *Id.* at 324; Fed. R. Civ. P. 56(e). A nonmovant has an obligation to present affirmative evidence to support his claims. *Settle v. Ross*, 992 F.2d 162, 163-64 (8th Cir. 1993).

---

[6]Defendant has also challenged the propriety of Dr. Dornhoffer's affidavit, which Plaintiff attached to his response, on the grounds that he was designated only as a treating physician and never properly designated as an expert witness, and because his affidavit directly conflicts his earlier deposition testimony as to the ultimate issues of deliberate indifference and causation. Because summary judgment can be determined on separate grounds, it is not necessary to resolve this conflict.

<u>Failure to Comply with Local Rule 56.1</u>

Defendant is correct that our local rule requires the opponent of a motion for summary judgment to file a statement of the material facts as to which it contends a genuine issue exists and provides that all material facts set forth in the statement of the moving party shall be deemed admitted unless controverted by the statement filed by the non-moving party.[7]   Strict application of the rule would end the matter and summary judgment should be granted, because the indisputable facts set forth in Defendant's statement would dictate that result.   However, district courts have broad discretion to enforce (or not enforce) local rules.   *Smith v. Insley's Inc.*, No. 06-3333, 2007 WL 2376764, *2 (8th Cir. Aug. 22, 2007), citing *Reasonover v. St. Louis County*, 447 F.3d 569, 579 (8th Cir. 2006).   In my opinion, the District Judge here would be within the exercise of reasonable discretion not to enforce the technical violation of this local rule because Plaintiff has made it clear in his own statement of facts and other moving papers which facts he thinks are disputed and why he thinks summary judgment should not be granted. I do not believe Defendant has been prejudiced by the violation.

---

[7]Rule 56.1 of the Local Rules of the Eastern and Western District of Arkansas provides:

(a) Any party moving for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure, shall annex to the notice of motion a separate, short and concise statement of the material facts as to which it contends there is no genuine issue to be tried.

(b) If the non-moving party opposes the motion, it shall file, in addition to any response and brief, a separate, short and concise statement of the material facts as to which it contends a genuine issue exists to be tried.

(c) All material facts set forth in the statement filed by the moving party pursuant to paragraph (a) shall be deemed admitted unless controverted by the statement filed by the non-moving party under paragraph (b).

CMS Liability

Plaintiff has sued only CMS.   He has not sued any of the individual doctors responsible for his treatment while in the ADC.   Therefore, it must be determined whether the corporation, which was acting under color of state law, can be held liable under the circumstances of this case.

As a general proposition, the doctrine of *respondeat superior* is not a basis for liability on a § 1983 claim.   For a defendant to be held liable under § 1983, he or she must have personally participated in, or had some responsibility for, the particular act which deprived the plaintiff of a constitutionally protected right.   *Clemmons v. Armontrout*, 477 F.3d 962, 967 (8th Cir. 2007).   "Liability under § 1983 requires a causal link to, and direct responsibility for, the deprivation of rights."   *Id.* (quoting *Mayorga v. Missouri*, 442 F.3d 1128, 1132 (8th Cir. 2006)).   The doctrine of *respondeat superior* is generally an improper basis upon which to rest a § 1983 claim because an individual cannot be held liable solely on the actions or inactions of his or her subordinates.   *Lenz v. Wade*, 490 F.3d 991, 995 (8th Cir. 2007).

In 1978, the United States Supreme Court, in *Monell v. Dep't of Social Services,* 436 U.S. 658 (1978), held that municipalities could be sued for § 1983 violations, but rejected governmental liability based on the doctrine of *respondeat superior*.   *Monell* held that a local government could be liable only when execution of its policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury.  Id. at 694.[8]   *Monell's* policy or custom requirement has

---

[8] *See* full discussion of the issue in part II of the opinion.   *Monell*, 436 U.S. at 690-95.

10

been applied by the Eighth Circuit to suits against private corporations performing functions traditionally within the exclusive prerogative of the state, *i.e.*, acting under color of state law. *Smith, supra* at *2; *Sanders v. Sears Roebuck & Co.*, 984 F.2d 972, 975-76 (8th Cir. 1993). This includes actions against medical care providers. *Burke v. N.D. Dep't of Corr. & Rehab.*, 294 F.3d 1043, 1044 (8th Cir. 2002) (per curiam) (corporation acting under color of state law may be liable only if policy, custom, or action by those who represent official policy inflicts injury actionable under § 1983). In fact, the whole body of law on issues arising out of *Monell* has been applied in the corporate context by most courts.

There is no contention or evidence that Defendant has adopted any unconstitutional policy in regard to treating its inmate patients. Nor is there any substantial evidence of a custom of deliberate indifference in treating patients or denying referrals. Plaintiff has inferred that Defendant has a motive not to refer patients to outside specialists because to do so would be at its expense under the contract with the ADC, thus reducing its profits. However, he has provided no statistical or other evidence of such a tendency. The existence of a motive does not equate to substantial proof.

Thus, the only potential means of imposing liability on Defendant would be to offer substantial evidence of action by one who could fairly be said to represent official policy. Plaintiff argues that Dr. Roland Anderson, as Regional Medical Director, is such a person, and says that Dr. Anderson's denial of the consultation request on October 4, 2001, was an act of deliberate indifference which should be imputed to the corporation.

*Monell* provided little guidance on who could "fairly be said to represent official policy." However, *Pembaur v. Cincinnati*, 475 U.S. 469 (1986), and *City of St. Louis v. Praprotnik*, 485 U.S. 112 (1988), established that a single action by an official may provide

a basis for imposing liability and that the issue is decided by reference to state law.  Not

every action will subject the entity to § 1983 liability.   Liability attaches only where the

decision-maker possesses final authority to establish policy.   1A Martin A. Schwartz,

*Section 1983 Litigation* §§ 7.15[A] & [B] (4th ed. 2005).  Determining whether an act is one

establishing policy or merely a discretionary act not imputable to the corporation is difficult.

The Eighth Circuit has stated that the distinction is whether or not the entity has made an

absolute delegation of authority.  In *Williams v. Butler*, 863 F.2d 1398 (8th Cir. 1988), the

court stated:

> [A] very fine line exists between delegating final policymaking authority to an
> official, for which a municipality may be held liable, and entrusting
> discretionary authority to that official, for which no liability attaches.  The
> distinction, we believe, lies in the amount of authority retained by the
> authorized policymakers.   A clear message from *Praprotnik* is that an
> incomplete delegation of authority - i.e., the right of review is retained - will
> not result in municipal liability, whereas an absolute delegation of authority
> may result in liability on the part of the municipality.

*Id.* at 1402.

Plaintiff here argues that as a Regional Director, Dr. Anderson had the necessary

authority.  Dr. Anderson countered in his deposition that he did not have such authority,

that his action on the consultation request was a deferral rather than a refusal and that the

treating physicians would have the final say on whether a consultation was necessary.[9]

He points to a provision in Dr. Casey's employment contract[10] which said that Dr. Casey

had the right to exercise his medical judgment and that if Dr. Casey had disagreed with the

---

[9]Plaintiff makes no contention that the treating CMS physicians were policymakers.

[10]During his deposition, Dr. Anderson read the provision as follows, "CMS shall not exercise
control of any nature, kind or description relating to the manner or means in which physician
performs medical services.   Physician shall be responsible for physician's own actions and
decisions."

deferral and insisted that Plaintiff be sent for an ENT consultation, it would have been done.  Thus, Dr. Anderson argues that he did not have final decision-making authority.

Be that as it may, even if Dr. Anderson could be considered a policymaker, Defendant cannot be held liable because Plaintiff has not shown that he could produce sufficient evidence upon which a jury find that the decision to defer a consultation constituted deliberate indifference.  That is, viewing the evidence in the light most favorable to Plaintiff, Dr. Anderson did not act with deliberate indifference.  If his decision was not a constitutional violation, it necessarily follows that Defendant cannot be liable because of it.

To prevail on a claim of deliberate medical indifference, a plaintiff must allege acts or omissions "sufficiently harmful to evidence deliberate indifference to [his] serious medical needs."  *Jolly v. Knudsen*, 205 F.3d 1094, 1096 (8th Cir. 2000) (citing *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)).  The Eighth Circuit has interpreted this standard to include both objective and subjective components: "The [plaintiff] must demonstrate (1) that [he] suffered [from] objectively serious medical needs and (2) that the prison officials actually knew of but deliberately disregarded those needs."  *Jolly*, 205 F.3d at 1096 (citing *Dulany v. Carnahan*, 132 F.3d 1234, 1239 (8th Cir. 1997));  *see also Alberson v. Norris*, 458 F.3d 762, 765-66 (8th Cir. 2006).

This standard has been well settled for some time and Plaintiff's burden is substantial.  In determining whether Defendant was deliberately indifferent to his serious medical needs, Plaintiff must demonstrate "more than negligence, more even than gross negligence."  *Estate of Rosenberg v. Crandell*, 56 F.3d 35, 37 (8th Cir. 1995).  Moreover, "mere disagreement with treatment decisions does not rise to the level of a constitutional

13

violation." *Id.*  First, Plaintiff must establish that he suffered from an objectively serious medical need.  A medical need is "serious" if it has been diagnosed by a physician as mandating treatment or if it is so obvious that even a lay person would recognize the necessity for a physician's treatment.  *Coleman v. Rahija*, 114 F.3d 778, 784 (8th Cir. 1997); *see also Roberson v. Bradshaw*, 198 F.3d 645, 648 (8th Cir. 1999).  Next, Plaintiff must establish that the medical provider was (1) personally aware of his serious medical needs; and (2) deliberately disregarded those needs.  *Coleman*, 114 F.3d at 785-86. When an inmate is complaining about a delay in treatment, as Plaintiff herein is, the objective "seriousness" of the deprivation must be measured by reference to the effect of any delay.  *Coleman*, 114 F.3d at 784 (citing *Crowley v. Hedgepeth*, 109 F.3d 500, 502 (8th Cir. 1997)).  To succeed on his claim, Plaintiff must place verifying medical evidence in the record to establish the detrimental effect of delay in medical treatment, *i.e.*, that the doctor ignored a critical or escalating situation, or that the delay adversely affected his prognosis.  *Id.*; *Beyerbach v. Sears*, 49 F.3d 1324, 1326-27 (8th Cir. 1995).

Here, Plaintiff has demonstrated that there is sufficient evidence to establish that he suffered from a serious medical need and that delay in treatment adversely affected his prognosis.  However, he has not come forward with evidence that any delay caused by Dr. Anderson adversely affected the prognosis, that Dr. Anderson was personally aware Plaintiff needed immediate evaluation or treatment by an ENT specialist, or that Dr. Anderson deliberately disregarded any such need.  The consultation request came less than three months after Plaintiff's first documented complaint.  Based on the request, Dr. Anderson felt that not all primary care treatment had been exhausted.  As demonstrated by the notation on his response, he did not refuse the request, but suggested that Dr.

14

Casey try additional treatment, including a steroid to lessen eustachian tube swelling and a broader spectrum antibiotic (Cipro) which he thought would be the first step taken by a specialist.   It appears that when Plaintiff sought treatment in the free world after his release, a similar conservative approach was tried, with the CT scan and diagnosis of cholesteatoma being reached only after the conservative approach failed.  Plaintiff has submitted the affidavit of Dr. Dornhoffer.  Defendant has objected to its consideration on the grounds that it is inconsistent with the doctor's deposition testimony and that the doctor was not properly disclosed as an expert.   Even if Dr. Dornhoffer's affidavit is fully considered, it does not provide substantial evidence that Dr. Anderson was guilty of deliberate indifference.   Dr. Dornhoffer indicated in his deposition that the suggested medication was appropriate.  Even though he stated in his affidavit that the failure to send Plaintiff for the consult was not good medical practice, he did not go so far as to say Dr. Anderson was guilty of deliberate indifference.   Under the uncontroverted facts as to medical treatment, it may be said that Dr. Anderson was negligent or even grossly negligent, but the evidence would not support a finding that Dr. Anderson was guilty of deliberate indifference in failing to approve the consultation request.  This single act was Dr. Anderson's only contact with Plaintiff's medical treatment.   He was never again presented with a request for an ENT or other consult for Plaintiff.  The physicians who treated Plaintiff after October 4, 2001, may have been guilty of deliberate indifference in allowing the situation to continue for months thereafter, knowing Plaintiff's medical history, but they are not defendants in this action.

<u>Conclusion</u>

Plaintiff has failed to come forward with evidence that would establish liability on the part of Defendant CMS.  The motion for summary judgment (docket entry #14) should be **granted** and the case should be dismissed with prejudice.

DATED this 10th day of September, 2007.


UNITED STATES MAGISTRATE JUDGE